1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAN PICKELL,

11            Plaintiff,                    No. 2:12-cv-0373 GEB DAD PS

12        v.

13   STEPHEN P. SANDS, et al.,              FINDINGS AND RECOMMENDATIONS

14            Defendants.

15   _____/

16          This matter came before the court on May 25, 2012, for hearing of defendants'

17   motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal

18   Rules of Civil Procedure.  Deputy Attorney General Amy Julia Winn appeared on behalf of

19   defendants Stephen P. Sands, in his official capacity as Registrar of the California Contractors

20   State Licensing Board, and Selvi Stanislaus in her official capacity as Executive Director of the

21   California Franchise Tax Board.  Plaintiff appeared in person at the hearing on his own behalf.

22   Oral argument was heard and the motion was taken under submission.

23   /////

24   /////

25   /////

26   /////

1

BACKGROUND

1

2      In his pro se complaint plaintiff alleges as follows.  On or about June 9, 1994,

3  plaintiff obtained a California State Contractors License.  (Compl. (Doc. No. 1.) at 3.[1])  On

4  September 20, 2011, the California Contractors State License Board ("CSLB"), issued to R P

5  Heating & Sheet Metal, which plaintiff operated, a Notice of Unsatisfied Final Liability.  (Id. at

6  8.)  The notice stated that on September 16, 2011, the California Franchise Tax Board ("FTB")

7  had notified the CSLB of R P Heating & Sheet Metal's outstanding tax liability in the amount of

8  $151,958.36.  (Id.)  The notice also indicated that pursuant to California Business and

9  Professions Code § 7145.5, proof of the satisfaction of that tax liability from the FTB had to be

10  submitted to the CSLB by November 20, 2011, or plaintiff would have his contractors license

11  suspended.  (Id.)

12      On November 9, 2011, plaintiff sent CSLB a letter challenging the suspension of

13  his contractors license and requesting a hearing.  (Id. at 3, 9.)  Specifically, plaintiff complained

14  that the use of the word "may" in § 7145.5 indicated that the CSLB was not required to suspend

15  his contractor's license due to the outstanding tax liability, that the tax liability in question bore

16  no rational relationship to the purpose of his contractor's license and therefore could not serve as

17  the basis for the license's suspension and that due process required that he be granted a hearing

18  before being deprived of his license.  (Id. at 9-12.)  Plaintiff was nonetheless not provided a

19  hearing, was unable to satisfy the outstanding liability and his contractors license was therefore

20  suspended on November 20, 2011.  (Id. at 3.)

21      Plaintiff filed his complaint in this action on February 20, 2012, and paid the

22  required filing fee.  Therein, he alleged causes of action for declaratory relief and violation of his

23  constitutional rights including his right to due process pursuant to 42 U.S.C. § 1983.  (Compl.

24  (Doc. No. 1.))  Specifically, plaintiff  challenges the constitutionality of § 7145.5 on its face,

25

26      [1] Page number citations such as this one are to the page number reflected on the court's
CM/ECF system and not to page numbers assigned by the parties.

1   asserting that he has a constitutionally protected property right to his contractor's license which

2   cannot be overcome absent a compelling state interest and that his outstanding tax liability bears

3   no rational relationship to the conditions governing the issuance of that license.   (Id. at 1-2, 4-6.)

4   In addition, plaintiff alleges that it was a separate violation of his right to due process to suspend

5   his contractor's license without providing him a hearing before the CSLB.  (Id. at 3, 6.)

6              Defendants filed the motion to dismiss now pending before the court on April 9,

7   2012.  (Doc. No. 7.)  Plaintiff filed his opposition on May 2, 2012, and defendants filed their

8   reply on May 16, 2012.[2]  (Doc. Nos. 9 and 10.)  Plaintiff filed an unauthorized sur-reply on May

9   23, 2012.[3]  (Doc. No. 12.)

10                          STANDARD

11             Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense,

12   by motion, that the court lacks jurisdiction over the subject matter of an entire action or of

13   specific claims alleged in the action.  "A motion to dismiss for lack of subject matter jurisdiction

14   may either attack the allegations of the complaint or may be made as a 'speaking motion'

15   attacking the existence of subject matter jurisdiction in fact."  Thornhill Publ'g Co. v. Gen. Tel.

16   & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).

17             When a party brings a facial attack to subject matter jurisdiction, that party

18   contends that the allegations of jurisdiction contained in the complaint are insufficient on their

19   face to demonstrate the existence of jurisdiction.  Safe Air for Everyone v. Meyer, 373 F.3d

20   1035, 1039 (9th Cir. 2004).  In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to

21   /////

22

23        [2] Defendants also filed a request for judicial notice of certain materials reflecting
    legislative history relating to California Business and Professions Code § 7145.5.  (Doc. No. 10-
24   2.)  A court may take "judicial notice of the legislative histories of statutes."  Rocky Mtn.
    Farmers Union v. Goldstene, 719 F. Supp.2d 1170, 1186 (E.D. Cal. 2010).

25        [3] Although a sur-reply is not authorized (see Fed. R. Civ. P. 12; Local Rule 230), in light
    of plaintiff's pro se status, the court has reviewed the sur-reply and considered it in reaching its
26   decision on the pending motion.

3

1  safeguards similar to those applicable when a Rule 12(b)(6) motion is made.[4]  See Sea Vessel

2  Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994); Osborn v. United States, 918 F.2d 724, 729 n. 6

3  (8th Cir. 1990).  The factual allegations of the complaint are presumed to be true, and the motion

4  is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction.

5  Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1039 n. 1 (9th Cir. 2003);

6  Miranda v. Reno, 238 F.3d 1156, 1157 n. 1 (9th Cir. 2001).  Nonetheless, district courts "may

7  review evidence beyond the complaint without converting the motion to dismiss into a motion

8  for summary judgment" when resolving a facial attack.  Safe Air for Everyone, 373 F.3d at 1039.

9          When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction

10  in fact, no presumption of truthfulness attaches to the plaintiff's allegations.  Thornhill Publ'g

11  Co., 594 F.2d at 733.  "[T]he district court is not restricted to the face of the pleadings, but may

12  review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the

13  existence of jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).  When

14  a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, plaintiff has

15  the burden of proving that jurisdiction does in fact exist.  Thornhill Publ'g Co., 594 F.2d at 733.

16          The purpose of a motion to dismiss pursuant to Rule 12(b)(6), on the other hand,

17  is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d

18  578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the

19  absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police

20  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a

21  claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

22  (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

23  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

24  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

25

26  _____

   [4]  Unless otherwise noted, all references to a "Rule" are to the Federal Rules of Civil
   Procedure.

1    In determining whether a complaint states a claim on which relief may be granted,

2  the court accepts as true the allegations in the complaint and construes the allegations in the light

3  most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

4  United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

5  stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

6  520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

7  form of factual allegations.  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

8  Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than

9  an unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A

10  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

11  elements of a cause of action."  Twombly, 550 U.S. at 555.  See also Iqbal, 556 U.S. at 676

12  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

13  statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

14  facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

15  not been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,

16  459 U.S. 519, 526 (1983).

17    In ruling on the motion, the court is permitted to consider material which is

18  properly submitted as part of the complaint, documents that are not physically attached to the

19  complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on

20  them, and matters of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir.

21  2001).

22                                         ANALYSIS

23    In moving to dismiss plaintiff's complaint pursuant to Rule 12(b)(1), defendants

24  argue that this action is barred by the Tax Injunction Act (TIA), 28 U.S.C. § 1341.  Specifically,

25  in their seven page motion defendants contend that plaintiff's complaint challenges the

26  constitutionality of California Business and Professions Code § 7145.5, which allows the CSLB

5

1   to suspend a state issued contractors license for failure to pay taxes, and thus this action "clearly

2   is one to enjoin the collection of a tax within the meaning of the TIA."[5]  (MTD (Doc. No. 7-2) at

3   5.)[6]

4                 Title  28 U.S.C. § 1341, provides:

5                 The district courts shall not enjoin, suspend or restrain the
                    assessment, levy or collection of any tax under State law where a

6                 plain, speedy and efficient remedy may be had in the courts of such
                    State.

7

8   The TIA imposes a jurisdictional limitation on federal courts.  Arizona Life Coalition Inc. v.

9   Stanton, 515 F.3d 956, 962 (9th Cir. 2008).  The Supreme Court has interpreted the TIA as a

10   "broad jurisdictional barrier."  Arkansas v. Farm Credit Servs. of Cent. Ark., 520 U.S. 821, 825

11   (1997).  Under the TIA, federal courts "must abstain from suits that would intrude into the

12   administration of state taxation."  Patel v. City of San Bernardino, 310 F.3d 1138, 1140 (9th Cir.

13   2002).  The dispositive question in determining whether the TIA's jurisdictional bar applies is

14   whether the plaintiff's action, if successful, would reduce the flow of state tax revenue.  Qwest

15   /////

16

17      [5]  California Business and Professions Code § 7145.5 was enacted in 1990 and provides, in relevant part, that:

18

19           (a) The registrar [of the Contractors State License Board] may refuse to issue, reinstate, reactivate, or renew a license or may suspend a license for the failure of a licensee to resolve all

20           outstanding final liabilities, which include taxes, additions to tax, penalties, interest, and any fees that may be assessed by the board,

21           the Department of Industrial Relations, the Employment Development Department, the Franchise Tax Board, or the State

22           Board of Equalization.

23      [6]  The undersigned notes that this case presents somewhat difficult and complex issues involving federal court jurisdiction and due process requirements in the unique context of a

24   state's election to utilize professional licensing requirements as a means to collect taxes. Resolution of those issues is complicated by the fact that plaintiff has been unable to obtain the

25   assistance of counsel and is attempting to litigate his constitutional claim on his own behalf and the fact that, in moving to dismiss, defendants have chosen to focus almost exclusively on their

26   contention that 28 U.S.C. § 1341 bars consideration of plaintiff's claim by the federal courts.

1   Corp. v. City of Surprise, 434 F.3d 1176, 1184 (9th Cir. 2006); May Trucking Co. v. Or. Dep't of

2   Transp., 388 F.3d 1261, 1267 (9th Cir. 2004).

3               In support of their argument that plaintiff's action is barred by the TIA, defendants

4   rely on the decision in Sears, Roebuck & Co. v. Roddewig, 24 F. Supp. 321 (S.D. Iowa 1938), in

5   which the District Court held that:

6               A suit to enjoin a tax and a suit to enjoin the use of the means
                provided by the taxing statute for the collection of the tax would
7               seem to be the substantial equivalents of each other.  If a Federal
                District Court has jurisdiction to enjoin the imposition of the
8               penalties provided in a State statute for failure on the part of the
                taxpayer or one whose duty it is to collect and remit taxes, it has, as
9               a practical matter, jurisdiction to prevent the collection of the tax.
                The only practical method which a State has to enforce payment of
10              taxes is the imposition and enforcement of penalties.  In a broad
                sense this may properly be regarded as a suit to enjoin the
11              collection of taxes – although there is much force in complainant's
                argument that it is merely a suit to prevent the Board from
12              revoking complainant's right to do business in the State because of
                its justifiable refusal to act as a collection agent for the State with
13              respect to its customers who bought goods and accepted delivery of
                them in states other than Iowa.  Resolving all doubts on the score
14              of jurisdiction in favor of the defendants, because of the evident
                intent of Congress to deprive the Federal District Courts of
15              jurisdiction to enjoin the collection of State taxes, we feel bound to
                decide that this Court is without jurisdiction to decide the merits of
16              this controversy.

17  (Id. at 324-25.)

18              In Sears, however, the plaintiff's complaint alleged that the tax at issue was

19  "illegal and void" and asked that defendants, the individual members of the Iowa State Board of

20  Assessment and Review, be "enjoined and restrained" from, in part, entering any order cancelling

21  plaintiff's sales permit or ordering plaintiff to comply with the tax, file quarterly reports, or make

22  available for inspection plaintiff's sales records.  (Id. at 323.)  The plaintiff in Sears had refused

23  to collect the state tax in question from its customers and asserted that "it [was] under no

24  obligation to collect" the tax.  (Id. at 323-24.)  Under those circumstances, the District Court

25  concluded that the plaintiff's suit was one which sought "to prevent the collection of a tax."  (Id.

26  at 325.)

1     Here, by contrast, plaintiff is not challenging the validity of the state tax in

2 question nor does he dispute that he owes the amount of taxes indicated in the notice provided to

3 him by defendants.  Instead, as plaintiff clearly states in his opposition to defendants' motion to

4 dismiss:

5             The FTB has assessed the tax.  The plaintiff does not dispute that.
              The plaintiff does not dispute owing the tax.  The plaintiff does not
6             even dispute that the FTB can collect the tax and does [not] seek
              [an] injunction from this court to enjoin any of those actions.  The
7             dispute here is simply that the state cannot suspend the plaintiff's
              state issued contractors license unless there is a reasonable reason
8             for suspending the license rationally related to the issuance of the
              license in the first instance.
9

10 (Pl.'s Opp.'n (Doc. No. 9) at 8.)  While plaintiff's assertion with respect to the suspension of his

11 contractors license due to his assessed, unpaid tax liability may ultimately be found to lack merit,

12 it is clear that in objecting to the license suspension he is not challenging or contesting the state

13 tax that was imposed.

14     Plaintiff also argues that the suspension of his contractors license "operates to

15 prohibit tax collection and not to advance it" because once his license was suspended he could

16 not "work at his chosen profession for which he had been trained" and thus "there is no paycheck

17 to levy in order to collect taxes."  (Id. at 2.)  Thus, it is not clear that if plaintiff's action were

18 successful, the suspension of his contractors license determined to be unconstitutional, and his

19 license was ultimately reinstated, that this action would necessarily reduce the flow of state tax

20 revenue.

21     Instructive on the TIA issue is the decision in Wells v. Malloy, 510 F.2d 74 (2nd

22 Cir. 1975).  In Wells, the plaintiff failed to pay the taxes due under Vermont's Motor Vehicle

23 Purchase and Use Tax and the Commissioner of Motor Vehicles therefore suspended his driver's

24 license.  Id. at 76.  The plaintiff did not dispute owing the tax but brought suit in federal court

25 arguing that he was unable to pay the tax and that the classification of motor vehicle drivers on

26 the basis of their liability for payment of the state use tax violated the Equal Protection Clause of

8

1  the Fourteenth Amendment.  Id.  The District Court dismissed the complaint on the ground that it

2  lacked jurisdiction to consider the suit under the TIA.  Id.  The Second Circuit reversed, holding

3  that while the TIA's use of the word "collection,"

> could be read broadly to including anything that a state has
> determined to be a likely method in securing payment . . . .
> Congress was referring to methods similar to assessment and levy
> . . . that would produce money or other property directly, rather
> than indirectly through a more general use of coercive power.

7  Id. at 77.[7]  See also Hibbs v. Winn, 542 U.S. 88, 109 (2004) ("In short, in enacting the TIA,

8  Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing

9  a challenge route other than the one specified by the taxing authority."); Avon Group, Inc. v.

10  State of New York Insurance Dept., 741 F. Supp. 82, 83 n.5 (S.D.N.Y. 1990) (distinguishing the

11  case before it because "[t]his case, therefore, is unlike [Wells] in which the taxpayer contended

12  that the sanction imposed for nonpayment of taxes was unconstitutional but did not contest the

13  constitutionality of the tax or the state's assessment thereof.")

14          Once again, in this case plaintiff is specifically not attacking the validity of the

15  taxes he is said to owe the state, but is instead merely challenging the licensing sanction being

16  imposed due to his non-payment.  In this regard, plaintiff's complaint alleges that he had a

17  "constitutionally protected property right in his state contractors license" and that the defendants

18  could only suspended that license "after a hearing" and based on a finding that he violated "some

19  public, safety or welfare concern for which the license was issued." (Compl. (Doc No. 1 at 4.)

20  _____

21      [7]  The Second Circuit also recognized that in enacting the TIA:

22          Congress was thinking of cases where taxpayers were repeatedly
            using the federal courts to raise questions of state or federal law
23          going to the validity of the particular taxes imposed upon them-not
            to a case where a taxpayer contended that an unusual sanction for
24          non-payment of a tax admittedly due violated his constitutional
            rights, an issue which, once determined, would be determined for
25          him and all others.

26  Wells v. Malloy, 510 F.2d 74, 77 (2nd Cir. 1975).

1    As noted, while plaintiff's claims may ultimately be found to lack merit it is clear

2    that he is not challenging the collection of a tax within the meaning of the TIA.  Therefore, his

3    action is not barred by the TIA.  See Hibbs, 542 U.S. at 107-08 ("In sum, this Court has

4    interpreted and applied the TIA only in cases Congress wrote the Act to address, i.e., cases in

5    which state taxpayers seek federal-court orders enabling them to avoid paying state taxes.");

6    BellSouth Telecommunications, Inc. v. Farris, 542 F.3d 499, 504 (6th Cir. 2008) ("In the final

7    analysis, the providers do not disclaim responsibility for the tax, and nothing about this lawsuit

8    seeks relief from legal responsibility for the underlying tax, whether through an injunction or

9    otherwise.  The Tax Injunction Act does not apply."); Luessenhop v. Clinton County, New York,

10   466 F.3d 259, 268 (2nd Cir. 2006) ("We hold that the TIA does not bar the district courts from

11   adjudicating the merits of these cases.  In the instant appeal the taxpayers are not attempting to

12   avoid paying state taxes.  They are willing to pay the full amount of their property taxes, both

13   current and back.  Likewise, the taxpayers do not contest the government's authority to collect

14   property taxes, nor do they dispute the assessments or amounts owed.  Therefore, these cases do

15   not raise the specter of federal courts reducing the flow of money into state coffers-the evil that

16   the TIA was intended to eradicate."); Burns v. Conley, 526 F. Supp.2d 235, 240-41 (D. R.I.

17   2007) ("Here, because this case does not implicate either of the goals set forth in Hibbs, the TIA

18   does not bar jurisdiction . . . .  This case . . . hinges on whether Plaintiffs failed to receive

19   adequate due process before the tax sale and the foreclosure proceeding.  Plaintiffs do not

20   challenge the power of the town to levy sewer assessments and to conduct tax sales; they would

21   have paid the taxes had they received notice.  Instead, they assert that the inadequate notice

22   accorded to them violates Rhode Island statutes governing tax sales and foreclosures.").

23   In passing, defendants also suggest that this court should decline jurisdiction in

24   the interest of comity even if TIA does not pose a jurisdictional bar.   (MTD (Doc. No. 7-2) at 5-

25   6.)  However, because plaintiff is not challenging a tax imposed by the state, it also appears that

26   his federal civil rights action is not barred from federal court consideration by principles of

10

1   comity.  See Hibbs, 542 U.S.  at 107, n.9 ("[T]his court has relied on 'principles of comity,' . . .

2   to preclude original federal- court jurisdiction only when plaintiffs have sought district-court aid

3   in order to arrest or countermand state tax collection."); But see Levin v. Commerce Energy, Inc.,

4   ___U.S.___, ___, 130 S. Ct. 2323, 2334-37 (2010) (concluding that comity considerations

5   required that complaint of alleged discriminatory state taxation first proceed in state court since

6   an adequate state court forum was available to hear and decide the plaintiffs' constitutional

7   claims).

8          Having determined that plaintiff's action is not jurisdictionally barred by the TIA

9   and that defendants have failed, at this time, to persuade that principles of comity require the

10  court to decline to exercise jurisdiction, the undersigned turns to defendants' motion to dismiss

11  pursuant to Rule 12(b)(6).  A Due Process claim brought pursuant to the Fourteenth Amendment

12  may be based upon substantive or procedural Due Process.  To state a substantive Due Process

13  claim, plaintiff must allege "a state actor deprived [him] of a constitutionally protected life,

14  liberty, or property interest."  Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008).  To put it

15  another way, the concept of substantive Due Process, "forbids the government from depriving a

16  person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with

17  rights implicit in the concept of ordered liberty.'"  Nunez v. City of Los Angeles, 147 F.3d 867,

18  871 (9th Cir. 1998) (quoting Rochin v. California, 342 U.S. 165, 172 (1952)).  To state a claim

19  for violation of procedural Due Process, plaintiff must allege: (1) a deprivation of a

20  constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

21  protections.  Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003).

22          Plaintiff's complaint meets these essential pleading requirements.  In moving to

23  dismiss the complaint for failure to state a claim, defendants assert that due process was satisfied

24  here because plaintiff had a right to protest his tax assessment to the FTB.   (MTD (Doc. No. 7-2)

25  at 6.)  This contention by defendants may miss the mark.  Plaintiff contests neither that he owes

26  the state taxes nor the amount owed.  Rather, he contests the CSLB's discretionary decision to

11

1   suspend his contractor's license based solely on his present inability to pay the state taxes he

2   owes.

3          Finally, in their reply, defendants assert that § 7145.5 comports with due process

4   in that it passes the rational basis test due to the state's legitimate interest in obtaining full

5   payment of taxes due from licensed contractors in particular.  (Reply (Doc. No. 10) at 6-7.)

6   Defendants cite the decision in Crum v. Vincent, 493 F.3d 988 (8th Cir. 2007) as instructive.

7          The court agrees that the Eighth Circuit case cited by defendants may ultimately

8   prove instructive in this case.[8]  In Crum the plaintiff physician brought a civil rights action in

9   federal court against the Missouri Director of Revenue and the Missouri Medical Board

10  challenging the revocation of his medical license for failure to pay state taxes or file tax returns.

11  493 F.3d at 991.  In a case of apparent first impression, the district court granted the defendants'

12  motion for summary judgment and the Eighth Circuit affirmed the judgment.  Id.  In doing so, the

13  appellate court rejected plaintiff's constitutional challenge to the statute that permitted revocation

14  of his medical license based upon his failure to pay his taxes, concluding for the reasons cited in

15  the opinion that the classification drawn by the challenged statute was rationally related to a

16  legitimate governmental interest.  Id. at 993-94 (plausible reasons for imposing higher penalties

17  on licensed professionals who shirk their tax liabilities may include the notion that they are more

18  financially secure and better educated thus both increasing the amount of taxes they likely owe

19  and making their tax neglect less excusable).  Because the statute was constitutional, the court

20  also concluded that the plaintiff was not entitled to two hearings (one before each defendant

21  agency) because the issue to be resolved at each would be the same - had he paid his taxes.  Id. at

22  993.

23  /////

24
      ⁸  The undersigned notes that in Crum the court did not address the possibility that the
25  plaintiff's action was barred by the TIA or principles of comity.  Presumably no such argument
    was presented either in the District Court or on appeal by the defendant state agencies in that
26  case.

1    It may well be that <u>Crum</u> is persuasive out of circuit authority with respect to the

2  issue presented by plaintiff's complaint.  However, in their pending motion to dismiss defendants

3  have not adequately articulated a basis for applying the holding in <u>Crum</u> so as to conclude that §

4  7145.5 survives the constitutional challenge mounted by plaintiff here.  Therefore, at this time

5  defendants have not met their burden of demonstrating that the plaintiff has failed to state a

6  claim.  <u>See</u> <u>Bangura v. Hansen</u>, 434 F.3d 487, 498 (6th Cir. 2006) (concluding that the moving

7  party bears such a burden on a 12(b)(6) motion); <u>Page v. Stanley</u>, No. CV 11-2255 CAS (SS),

8  2012 WL 5471107, at *7 (C.D. Cal. Oct. 19, 2012) ("Defendants have failed to meet their burden

9  of showing that no set of facts consistent with Plaintiff's allegations would entitle Plaintiff to

10  relief.") (and cases cited therein).

11                                         CONCLUSION

12    Accordingly, IT IS HEREBY RECOMMENDED that defendants' April 9, 2012

13  motion to dismiss (Doc. No. 7) be denied without prejudice[9] and that defendants be ordered to

14  respond to the complaint within thirty days after any order adopting these findings and

15  recommendations is filed and served.

16    These findings and recommendations are submitted to the United States District

17  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

18  days after being served with these findings and recommendations, any party may file written

19  objections with the court and serve a copy on all parties.  Such a document should be captioned

20  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21  shall be served and filed within seven days after service of the objections.  The parties are

22  /////

23  /////

24

---

25    [9] If these findings and recommendations are adopted by the assigned District Judge,
defendants may elect to file another motion to dismiss more fully expounding on their arguments
based upon TIA, principles of comity or failure to state a claim or may instead elect to answer the
26  complaint and proceed by way of motion for summary judgment as the defendants did in <u>Crum</u>.

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: December 5, 2012.

4

5  _____

DALE A. DROZD

6  UNITED STATES MAGISTRATE JUDGE

7

8  DDAD:6
Ddad1/orders.pro se/pickell0373.mtd.ord

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

14