UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN PICKELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STEPHEN P. SANDS, et al.,<br><br>　　　　Defendants. | No. 2:12-cv-0373 TLN DAD PS<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

Plaintiff Dan Pickell is proceeding pro se in the above entitled action. Accordingly, the matter has been referred to the undersigned pursuant to Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1). On September 20, 2013, the parties appeared for hearing of plaintiff's motion for summary judgment and defendants' cross motion for summary judgment. Plaintiff Dan Pickell appeared on his own behalf and attorney Jane O'Donnell appeared on behalf of the defendants.

Upon consideration of the arguments on file and at the hearing, and for the reasons set forth below, the undersigned will recommend that plaintiff's motion for summary judgment be denied and that defendants' cross motion for summary judgment be granted.

BACKGROUND

Plaintiff, proceeding pro se, commenced this action on February 14, 2012, by filing a complaint and paying the required filing fee. (Dkt. No. 1.) In his complaint plaintiff alleges as follows. On or about June 9, 1994, plaintiff obtained a California State Contractors License.

1

(Compl. (Dkt. No. 1.) at 3.[1]) On September 20, 2011, the California Contractors State License Board ("CSLB"), issued to R P Heating & Sheet Metal, which plaintiff operated, a Notice of Unsatisfied Final Liability. (Id. at 8.) The notice stated that on September 16, 2011, the California Franchise Tax Board ("FTB") had notified the CSLB of R P Heating & Sheet Metal's outstanding tax liability in the amount of $151,958.36. (Id.) The notice also indicated that pursuant to California Business and Professions Code § 7145.5, proof of the satisfaction of that tax liability from the FTB had to be submitted to the CSLB by November 20, 2011, or plaintiff's contractor's license would be suspended.[2] (Id.)

On November 9, 2011, plaintiff sent CSLB a letter challenging the suspension of his contractor's license and requesting a hearing. (Id. at 3, 9.) Specifically, plaintiff complained that the use of the word "may" in Business and Professions Code § 7145.5 indicated that the CSLB was not required to suspend his contractor's license due to the outstanding tax liability, that the tax liability in question bore no rational relationship to the purpose of his contractor's license and, therefore, could not serve as the basis for suspension of that license and that due process required that he be granted a hearing before his license was suspended. (Id. at 9-12.) Plaintiff was not provided a hearing, did not satisfy his outstanding tax liability and, on November 20, 2011, his contractor's license was suspended. (Id. at 3.)

Based on these allegations, the complaint alleges causes of action for declaratory relief and violation of plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983.[3] On April 9, 2012,

---

[1] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[2] Section § 7145.5 provides that the "registrar may . . . suspend a license for the failure of a licensee to resolve all outstanding final liabilities, which include taxes . . . ."

[3] A litigant who complains of a violation of a constitutional right does not have a cause of action directly under the United States Constitution. Livadas v. Bradshaw, 512 U.S. 107, 132 (1994) (affirming that it is 42 U.S.C. § 1983 that provides a federal cause of action for the deprivation of rights secured by the United States Constitution); Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979) (explaining that 42 U.S.C. § 1983 was enacted to create a private cause of action for violations of the United States Constitution); Azul–Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992) ( "Plaintiff has no cause of action directly under the United States Constitution.").

1  defendants filed a motion to dismiss. (Dkt. No. 7.) That motion was denied without prejudice on
2  January 18, 2013. (Dkt. No. 17.) Defendants filed an answer on February 15, 2013, (Dkt. No.
3  18), and a scheduling order was issued on May 21, 2013. (Dkt. No. 25.)

4  Plaintiff filed his motion for summary judgment on June 19, 2013. (Dkt. No. 28.)
5  Defendants filed a cross-motion for summary judgment on August 6, 2013. (Dkt. No. 31.)
6  Plaintiff filed an untimely opposition on September 13, 2013 to defendants' motion, (Dkt. No.
7  35), and defendants filed a response on September 16, 2013.[4] (Dkt. No. 36.)

## MOTION FOR SUMMARY JUDGMENT

### I. Legal Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.). See also FED. R. CIV. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after

---

[4] Although plaintiff's opposition was untimely, in light of his pro se status the undersigned has nonetheless considered that opposition in resolving the pending motions. Accordingly, plaintiff's September 13, 2013 motion for an extension of time to file his untimely opposition, (Dkt. No. 36), will be granted.

adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See FED. R. CIV. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). It is

the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II.     Plaintiff's Statement of Undisputed Facts

Plaintiff's purported statement of undisputed facts is not supported by citations to evidence. In his statement, plaintiff asserts that is undisputed that he is "not attempting to hinder or stop defendants from assessing or collecting the tax owed by plaintiff," that he was denied a hearing to challenge the suspension of his contractor's license and that his contractor's license was suspended pursuant to California Business and Professions Code § 7145.5 for a reason that had nothing to do with public safety.[5] (Dkt. No. 28-1 at 2-3.)

III.    Defendants' Statement of Undisputed Facts

Defendants' statement of undisputed facts is supported by citations to a declaration from attorney Jane O'Donnell signed under penalty of perjury and defendants' requests for admissions.[6] Defendants' statement of undisputed facts establishes the following.

A Notice of Proposed Assessment for the 2004 tax year was mailed to plaintiff by the California Franchise Tax Board ("FTB") on March 27, 2006. Plaintiff did not contest the assessment and, therefore, the assessment became final. (Defs.' SUDF (Dkt. No. 31-3) 16-17.[7])

---

[5] The undersigned notes that what plaintiff characterizes as statements of undisputed fact may be more accurately described as assertions or conclusions unsupported by citations to evidence. Nonetheless, in light of plaintiff's pro se status and the fact that the statements he sets forth as undisputed fact are essentially not disputed by the parties, the undersigned has considered them.

[6] According to defendants, plaintiff failed to respond to defendants' request for admissions and the requests are, therefore, deemed admitted pursuant to FED. R. CIV. PRO. 36(a)(3). (Defs.' MSJ (Dkt. No. 31-2) at 3.)

[7] Citations here are to the specific numbered undisputed fact asserted.

5

1    A Notice of Proposed Assessment for the 2005 tax year was mailed to plaintiff by the
2 FTB on April 9, 2007.  Plaintiff filed a protest on June 8, 2007, through his designated
3 representative.  A Notice of Oral Hearing was sent to plaintiff, with a hearing date scheduled for
4 October 3, 2007.  Nonetheless, neither plaintiff nor his representative attended the October 3,
5 2007 FTB hearing.  An appeal, however, was filed with the California State Board of
6 Equalization ("SBE"), on plaintiff's behalf regarding the 2005 tax year assessment.  A Board
7 Hearing Notice was issued by the SBE, setting an oral hearing for April 28, 2009.  Plaintiff's
8 representative, however, waived appearance at the April 28, 2009 SBE hearing and the proposed
9 2005 tax year assessment was sustained on appeal.  Plaintiff petitioned for a rehearing and that
10 petition was denied.  (Defs.' SUDF (Dkt. No. 31-3) 18-26.)

11    On January 1, 2008, the FTB mailed plaintiff Notices of Proposed Assessments for the
12 2000, 2001, 2002 and 2003 tax years.  Plaintiff filed protests to those proposed tax assessments
13 through his designated representative on March 14, 2008.  A Notice of Oral Hearing was again
14 mailed to plaintiff on July 30, 2008, setting a FTB hearing for August 11, 2008.  Neither plaintiff
15 nor an appointed representative on his behalf attended that hearing and the proposed assessments
16 were sustained.  (Defs.' SUDF (Dkt. No. 31-3) 8-11.)  An appeal was filed with the SBE on
17 plaintiff's behalf and an oral hearing was set for June 16, 2010.  Plaintiff's representative
18 appeared at that June 16, 2010 SBE hearing.  Thereafter the proposed tax assessments were
19 sustained on appeal.  Plaintiff failed to pay his assessed California state income tax liability for
20 the 2000, 2001, 2002 and 2003 tax years and he did not file suit in any California Superior Court
21 contesting the assessed amounts.  (Defs.' SUDF (Dkt. No. 31-3) 12-16.)

22    The FTB mailed plaintiff a Notice of Proposed Assessment for the 2006 tax year on
23 September 2, 2008.  Plaintiff filed a protest of the proposed assessment through his designated
24 representative on October 28, 2008.  A Notice of Oral Hearing was sent to plaintiff scheduling a
25 hearing for February 25, 2009.  A second notice was sent to plaintiff rescheduling the hearing for
26 March 5, 2009.  Neither plaintiff nor his representative attended the March 5, 2009 FTB hearing
27 and the proposed assessment was sustained.  (Defs.' SUDF (Dkt. No. 31-3) 28-32.)  An appeal to
28 the SBE regarding the proposed assessment for the 2006 tax year was filed on plaintiff's behalf

6

and a hearing was set for June 16, 2010. Plaintiff's representative appeared on plaintiff's behalf at the June 16, 2010 hearing. The SBE sustained the proposed assessment. (Defs.' SUDF (Dkt. No. 31-3) 33-35.)

A Notice of Proposed Assessment for the 2007 tax year was mailed to Plaintiff by the FTB on February 22, 2010. No timely protest was filed by plaintiff in response to that Notice of Proposed Assessment and that assessment became final. A Notice of Proposed Assessment for the 2008 tax year was mailed to Plaintiff by the FTB on June 20, 2011. Likewise, no protest was filed in response to the Notice of Proposed assessment and that assessment became final. (Defs.' SUDF (Dkt. No. 31-3) 37-40.)

The California Contractor's State License Board ("CSLB") sent plaintiff a Notice of Unsatisfied Final Liability on September 20, 2011, advising plaintiff that he must submit proof from the FTB that his outstanding tax liability was satisfied by November 20, 2011, or his state contractor's license would be suspended. Plaintiff did not submit such proof by November 20, 2011, and on November 21, 2011, the CSLB sent plaintiff a Notice of License Suspension for Unsatisfied Final Liability pursuant to California Business and Professions Code § 7145.5. Business and Professions Code § 7145.5 specifically provides for the suspension of a contractor's license for the nonpayment of taxes. (Defs.' SUDF (Dkt. No. 31-3) 7, 41-43.)

IV. Plaintiffs' Opposition

Plaintiff's opposition does not comply with Local Rule 260(b). That rule requires a party opposing summary judgment to (1) reproduce each fact enumerated in the moving party's statement of undisputed facts and (2) expressly admit or deny each fact. Under that provision the party opposing summary judgment is also required to cite evidence in support of each denial.

Nonetheless, in the absence of the required admissions and denials, and in light of plaintiff's pro se status, the court has reviewed plaintiff's filing in an effort to discern whether he actually denies any material fact asserted in defendants' statements of undisputed facts and, if so, what evidence plaintiff has offered that may demonstrate the existence of a disputed issue of material fact with respect to any of his claims.

/////

In his opposition, plaintiff restates his assertion that he "does not disclaim responsibility for the tax," but contends that he was entitled to a hearing regarding the suspension of his contractor's license and that his state contractor's license could only be suspended based on "some public safety or welfare concern for which the license was issued." (Pl.'s Opp.'n (Dkt. No. 35) at 2.)

ANALYSIS

Plaintiff repeatedly asserts in his complaint and in his motion for summary judgment, that he had a "vested constitutionally protected right in the state contractor's license" issued to plaintiff. (Compl. (Dkt. No. 1) at 5; Pl.'s MSJ (Dkt. No. 28) at 3.) Moreover, plaintiff argues that California Business & Professions Code § 7145.5 is unconstitutional because "[t]here is not a compelling, or even substantial, state interest that would justify" the suspension of his contractor's license "in the furtherance of the collection of alleged taxes," (Compl. (Dkt. No. 1) at 5), and that the suspension of his contractor's license pursuant to § 7145.5 violated his right to due process because he was not provided a hearing prior to the suspension of his license. (Pl.'s MSJ (Dkt. No. 28) at 4-5.)

The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONSTITUTION, AMEND. XIV § 1. This clause guarantees both procedural and substantive due process, protecting individuals against the deprivation of a liberty or property interest by the government. "A substantive due process inquiry focuses on 'what' the government has done," while a procedural due process analysis focuses upon "'how and when' the government did it." Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).

With respect to a §1983 claim based on an alleged violation of substantive due process, the Supreme Court has recognized "that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." Conn v. Gabbert, 526 U.S. 286, 291-92 (1999). Thus, "[a] State cannot exclude a person [from] . . . any . . . occupation in a manner or for reasons that contravene the Due Process

/////

8

1  or Equal Protection Clause of the Fourteenth Amendment." Schware v. Board of Bar Exam. of
2  State of New Mexico, 353 U.S. 232, 238-39 (1957).  However, regulations restricting the practice
3  of a profession, "'as a general matter, are constitutional if they have a rational connection with the
4  applicant's fitness or capacity to practice the profession.'" Dittman v. California, 191 F.3d 1020,
5  1030 (9th Cir. 1999) (quoting Lowe v. SEC, 472 U.S. 181, 228 (1985)).  See also Independent
6  Training and Apprenticeship Program v. California Dept. of Indus. Relations, 730 F.3d 1024,
7  1039 (9th Cir. 2013) ("legislation will not be struck down on substantive due process grounds so
8  long as it implements a rational means of achieving a legitimate governmental end"); Meyer v.
9  Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1045 (9th Cir. 2012) (legislation implicating
10  economic interest will not be struck down on substantive due process grounds so long as it
11  "implements a rational means of achieving a legitimate governmental end"); Richardson v. City
12  and County of Honolulu, 124 F.3d 1150, 1162 (9th Cir. 1997) ("We will strike down a statute on
13  substantive due process grounds if it is arbitrary and irrational.").  "[T]he threshold for a
14  rationality review challenge asks only whether the enacting body could have rationally believed at
15  the time of enactment that the law would promote its objective." MHC Financing Ltd.
16  Partnership v. City of San Rafael, 714 F.3d 1118, 1130-31 (9th Cir. 2013)
17       Here, the legislation at issue is California Business and Professions Code § 7145.5, which
18  allows for the suspension of a contractor's license for, among other things, the licensee's failure
19  to pay taxes.  It is readily apparent that the California legislature could have rationally believed
20  that § 7145.5 would promotes the state's interest in the collection of taxes, benefit its citizens by
21  helping to ensure that a state licensed contractor could satisfy a potential liability and, arguably,
22  that the licensee was of good moral character. See Dittman, 191 F.3d at 1031-32 (a state
23  regulation requiring an applicant for renewal of acupuncturist's license to disclose his or her
24  social security number was rationally connected to capacity and fitness because such a
25  requirement ensured that acupuncturists have the financial ability to satisfy liability claims and
26  because a failure to pay one's taxes evidenced lack of moral character); Miller v. Reed, 176 F.3d
27  1202, 1207 (9th Cir. 1999) (California law requiring applicants for drivers' licenses to provide
28  their social security number was rationally related to California's legitimate interest in collecting

tax obligations); Crum v. Missouri Director of Revenue, 455 F.Supp.2d 978, 993 (W.D. Mo. 2006) (state law authorizing revocation of medical license for failure to pay taxes found to be constitutional because state had legitimate interest in ensuring that physicians complied with state tax laws); Wells v. Malloy, 402 F. Supp. 856, 859-60 (D.C. Vt. 1975) (court finding that a "rational basis is readily apparent" for a statute allowing suspension of one's driver's license for failure to pay taxes because the statute "is clearly designed to aid in the collection of the tax"); Tolces v. Trask, 76 Cal.App.4th 285, 292 (1999) (law providing for the suspension of one's driver's license for failure to pay child support was rationally related to legitimate governmental purpose of enforcing child support orders).

Accordingly, the undersigned finds that the suspension of plaintiff's contractor's license pursuant to California Business and Professions Code § 7145.5 did not violate plaintiff's right to substantive due process.[8]

With respect to a § 1983 claim based upon an alleged violation of procedural due process, such a claim has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government, and (3) lack of process. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). Property interests are not created by the Constitution but "by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). At one end of the spectrum, a state operating license that can be revoked only "for cause" creates a property interest. See, e.g., Barry v. Barchi, 443 U.S. 55, 64 (1979). At the opposite end of the spectrum, a statute that grants the reviewing body unfettered discretion to approve or deny an application

---

[8] Although it is not clear from plaintiff's complaint, to the extent plaintiff is attempting to assert an equal protection claim, that claim also fails because §7145.5 is rationally related to a legitimate state interest. See Miller, 176 F.3d at 1207 (noting California's legitimate interest in collecting tax obligations); see also Crum v. Vincent, 493 F.3d 988, 994 (8th Cir. 2007) (finding state had rational basis for statute that permitted revocation of medical license for failure to pay state income taxes); Corrigan v. City of Newaygo, 55 F.3d 1211, 1217 (6th Cir. 1995) ("the City's interest in encouraging its citizens to pay taxes through a ballot access restriction must survive 'rational basis' review").

does not create a property right. See, e.g., Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir. 1980). "Whether a statute creates a property interest in the renewal of an existing operating license falls somewhere in the middle of those extremes." Thornton v. City of St. Helens, 425 F.3d 1158, 1164-65 (9th Cir. 2005)

Here, assuming without deciding that plaintiff had a property interest in his contractor's license, it is undisputed that plaintiff was afforded due process with respect to the assessment of his outstanding tax liability. In this regard, the undisputed evidence before the court on the pending cross motions for summary judgment establishes that the FTB repeatedly sent plaintiff notices of the proposed tax assessments and provided him numerous opportunities to be heard in opposition to those proposed assessments. Moreover, plaintiff has consistently stated in this action that he does not challenge the FTB's calculation or imposition of that tax liability.

Accordingly, the undersigned finds that plaintiff's right to due process was satisfied with respect to the assessment of his tax liability. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795 (1983) (Due process requires notice and an opportunity to be heard); Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."); Chicanos Por La Causa, Inc. v. Napolitano, 558 F.3d 856, 867 (9th Cir. 2009) ("The deprivation of a property interest must be preceded by notice and opportunity for hearing appropriate to the nature of the case.").

Plaintiff, argues that regardless of the process he was provided with respect to the assessment of his tax liability, he was also entitled to a second hearing solely related to the suspension of his contractor's license. In this regard, plaintiff argues:

> Once again, Plaintiff does not disclaim responsibility for the tax. The due process that Plaintiff has been denied relates to the automatic suspension of his contractor's license without a hearing and to the denial of his contractor's license for reasons other than public health and safety reasons for which the license was required and issued. Plaintiff is not seeking to re-litigate his taxes.

(Pl.'s Opp.'n (Dkt. No. 35) at 2.)

/////

Plaintiff's argument is unpersuasive.  As noted above, the undisputed evidence establishes that plaintiff failed to pay his tax liability and his contractor's license was suspended on that basis alone pursuant to California Business and Professions Code § 7145.5, which provides that such a license may be suspended for the failure to pay taxes.  Having already received notice and an opportunity to be heard with respect to the assessment of his tax liability, plaintiff was not entitled to a second hearing simply to challenge the suspension of his contractor's license.  His contractor's license was subject to suspension solely because he failed to pay his assessed tax liability.  A second hearing to discuss the suspension of his contractor's license would have been redundant and pointless in light of the fact that plaintiff was not contesting his assessed tax liability, which was the sole reason his contractor's license was subject to suspension.

Accordingly, the undersigned finds that the suspension of plaintiff's contractor's license did not violate plaintiff's right to procedural due process.  See Crum v. Vincent, 493 F.3d 988, 993 (8th Cir. 2007) ("We also reject Crum's argument that he was constitutionally entitled to opportunities for two hearings – one to challenge the tax deficiency and another to challenge the revocation of his license.  So long as one hearing will provide the affected individual with a meaningful opportunity to be heard, due process does not require two hearings on the same issue."); see also Arnett v. Kennedy, 416 U.S. 134, 225 (1974) ("As we observed . . . due process does not, of course, require two hearings."); American Civil Liberties Union of Nevada v. Masto, 670 F.3d 1046, 1059 (9th Cir. 2012) ("The Due Process Clause does not entitle an individual to a hearing unless there is some factual dispute that a hearing could serve to resolve."); In re Federal Skywalk Cases, 680 F.2d 1175, 1190 (8th Cir. 1982) ("In the absence of defenses that could be asserted against individual class members, or other such individualized inquiries, due process does not require multiple hearings as long as there is one full and fair determination of the merits."); Dami v. Department of Alcoholic Beverage Control, 176 Cal.App.2d 144, 151 (1959) ("Due process insists upon the opportunity for a fair trial, not a multiplicity of such opportunities.")

/////

/////

CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that plaintiff's September 13, 2013 motion for an extension of time to file an untimely opposition (Dkt. No. 36) is granted.

Also, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's June 19, 2013 motion for summary judgment (Dkt. No. 28) be denied;

2. Defendants' August 6, 2013 motion for summary judgment (Dkt. No. 31) be granted; and

3. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 6, 2014

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1\orders.pro se\pickell0373.msj.f&rs.docx